FILED
HARRISBURG
SEP 0 6 2001
MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORK WALLCOVERINGS, INC.,    :
                             :
        Plaintiff,           :    NO. 1:CV-01-0793
                             :
    v.                       :    (The Hon. Sylvia H. Rambo)
                             :
S.A. MAXWELL COMPANY, INC.   :
and JAIMA BROWN,             :
        Defendants.          :

DEFENDANT JAIMA BROWN'S BRIEF IN OPPOSITION
TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

INTRODUCTION

Insofar as is material to the instant motion, this is an action for copyright infringement against S.A. Maxwell, Inc. ("Maxwell"), the company which produced and sold the allegedly infringing wallcovering, and Jaima Brown, the Maxwell employee whom Plaintiff alleges was responsible for the design of that wallcovering.

Shortly after the complaint was filed, but before formal service was even attempted, Plaintiff's counsel sent a courtesy copy of the complaint to Richard L.

Emmert, Maxwell's President, with a covering letter which, *inter alia,* defamed Ms. Brown. In its Brief In Support of Motion to Dismiss, Plaintiff disingenuously states that this letter "urged Maxwell to review the matter and consider resolving issues between the two companies." (Pl.'s Brief at p. 1). Defendants take umbrage at Plaintiff's interpretation of the letter. It seems inconceivable that Plaintiff sought to mend fences with Maxwell by including an inflammatory and wholly irrelevant remark impugning the character and ethics of one of Maxwell's employees

With the answer to the complaint, Ms. Brown asserted a counterclaim seeking punitive and compensatory damages for this defamation. While Ms. Brown knows that the defamatory statement was disseminated to her employer, she will not know until discovery has been taken the extent to which it was disseminated to others.

Plaintiff now moves to dismiss Ms. Brown's counterclaim for failure to state a claim upon which relief can be granted, on the ground that the allegedly defamatory statement was made in the regular course of a judicial proceeding and was pertinent and material to the relief which Plaintiff seeks in this proceeding. Defendant Jaima Brown opposes Plaintiff's motion on the ground that the statement was neither pertinent and material to the relief which Plaintiff seeks nor issued in the regular course of a judicial proceeding.

## ARGUMENT

## PRELIMINARY POINT

While it is not necessary for the purposes of the instant motion to decide whether Ms. Brown's counterclaim is governed by the law of the Commonwealth of Pennsylvania, from which the defamatory statement was sent, or by the laws of the State of Illinois, where Ms. Brown resides and works and where she was harmed, this choice-of-law question may need resolution before the merits of her defamation case can be determined. The following overview seems to confirm that Illinois law is to be applied.

If there is a conflict between the laws of the two states, the court must then "weigh the competing state interests and policies and apply 'the law of the state having the most significant contacts or relationships with the particular issue.'" *Wilson v. Slatalla,* 970 F.Supp. 405, 414 (E.D.Pa. 1997) (quoting *Griffith v. United Air Lines, Inc.,* 203 A.2d 796 (Pa. 1964)); *Fitzpatrick v. Milky Way Productions, Inc.,* 537 F. Supp. 165, 171 (E.D. Pa. 1982).

In the context of a defamation claim, "[t]he state of plaintiff's domicile is generally the place where most of his reputational contacts are found; therefore, 'the state of plaintiff's domicile generally has the greater concern in vindicating plaintiff's good name and providing compensation for harm caused by the defamatory publication.'" *Wilson, supra,* at 414 (quoting *Fitzpatrick v. Milky Way*

3

*Productions, Inc.*, 537 F. Supp. 165, 171 (E.D. Pa. 1982)). "Furthermore, in a defamation suit where the defamatory statements were published in more than one jurisdiction, the state with the significant interest is the domicile of the plaintiff." *Id.* (citing *City of Rome v. Glanton*, 958 F. Supp. 1026, 1034 n.5 (E.D. Pa. 1997)). If a conflict exists, the law governing the action should be Illinois, the state where Ms. Brown is both domiciled and employed, where the libelous publication was circulated to her employer via letter and where, therefore, Ms. Brown's personal and professional reputation could be subjected to the greatest damage. *See, e.g., City of Rome v. Glanton*, 958 F. Supp. at 1034; *Bradford v. American Media Operations, Inc.*, 882 F. Supp. 1508 (E.D. Pa. 1995).

While Pennsylvania and Illinois trade libel law are similar, there appear to be two differences: (1) the need to demonstrate general or actual damages (mental anguish or harm to reputation) in order to recover for libel *per se,* and (2) the extent to which the litigation privilege is applicable to an out-of-court communication made after institution of suit before service of the complaint to a third party (somebody other than an attorney, the defamed person or a client). These differences seem to create a conflict requiring application of Illinois law to the ultimate resolution of Ms. Brown's counterclaim.

With regard to the litigation privilege issue which Plaintiff has raised in her motion to dismiss, Illinois courts have articulated an unwillingness to extend the

4

privilege to protect an attorney's out-of-court communications to *anybody* other than opposing counsel, or between an attorney and client related to pending litigation or between attorneys representing different parties suing the same entity. *See, e.g. Kurczaba v. Pollock*, 318 Ill. App.3d 686, 704 (2000*)*; *Thompson v. Frank*, 313 Ill. App.3d 661, 664 (2000); *Golden v. Mullen*, 295 Ill. App.3d 865, 872 (1997); *see also Lykowski v. Bergman*, 299 Ill. App.3d 157 (1998) (refusing to extend litigation privilege to statements impugning plaintiff's character, when those statements were made to newspapers *and plaintiff's employer*) Pennsylvania courts are less clear on this, not adhering to any *general* principle denying extension of the privilege to out-of-court communications with third parties outright, but instead, taking a fact-specific approach which focuses on whether the communication was issued in the "regular course of a judicial proceeding." *Post v. Mendel*, 507 A.2d 351 (Pa. 1986).

POINT I

THE COUNTERCLAIM STATES A CLAIM
UPON WHICH RELIEF CAN BE GRANTED

Whether governed by Pennsylvania law [42 Pa.C.S.§8343 (2001)] or Illinois law [*Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 323 (1999), *appeal denied,* 184 Ill.2d 555 (1999)], the counterclaim alleges the elements of a cause of action for defamation, and Plaintiff's motion to dismiss

does not claim that it does not. While there should be no question that statements of the nature made by Plaintiff's counsel to Ms. Brown's employer would necessarily be defamatory, in its brief on the instant motion Plaintiff states:

> In her counterclaim, Defendant Brown alleges that she was defamed by statement made in a letter from counsel for York to the President of Maxwell, Brown's employer. Assuming for the sake of argument that Defendant Brown is correct in her allegation that a statement contained in undersigned counsel's correspondence is capable of a defamatory meaning, which York disputes, any such statement is privileged.

In the Rule 12(b)(6) motion, "the Court must accept the [counterclaimant's] factual allegations as true, drawing all reasonable inferences in plaintiff's favor." 2 *Moore's Federal Practice 3D,* §1234[1][b] at p. 12-58.

The counterclaim alleges that the statement at issue "is patently false and *defamatory per se* in that it prejudices Brown in her trade, profession and business and wrongfully imputes to Ms. Brown a lack of integrity in the discharge of her duties of employment" [¶7], was "published with malice and intent to cause injury to Brown" [¶9] and ""Brown has been injured by the publication of the defamatory statement" [¶10].

Thus, at this stage in the proceedings Plaintiff is not entitled to dispute the defamatory meaning of the statement in issue, let alone question that it has

defamed Ms. Brown, but rather Plaintiff must concede that such is the case, and the Court cannot find otherwise.

The court should not grant a motion to dismiss a defamation claim unless it is "certain that the communication is incapable of bearing a defamatory meaning." *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 489 A.2d 1364, 1368 (Pa. Super. 1985) (so stating in the context of a demurrer). Moreover, "in making this determination, [the court] must accept as true all well-pleaded material facts alleged in the complaint, as well as all inferences reasonably deducible therefrom," *id.* at 1368, and, in general, assess whether the communication "'tends so to harm the reputation of (the complaining party) so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1054 (Pa. 1996) (quoting *Bird v. Philadelphia Electric Co.*, 167 A.2d 472, 475 (Pa. 1960)).

Pennsylvania courts will recognize as defamatory a communication which "'ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession.'" *Gordon*, 489 A.2d at 1368 (quoting *Thomas Merton Center v. Rockwell International Corp.*, 442 A.2d 213, 216 (Pa. 1981)); *see also American Standard Life & Acc. Ins. Co. v. U.R.L., Inc.*, 701 F. Supp. 527, 540 (M.D. Pa. 1988) (Caldwell, J.) (denying the plaintiff's motion to dismiss claim for defamation and

determining that statements alleging that the plaintiff insurance company was "no longer in business" and that "their policies are no longer good" could be injurious to the plaintiff's business). However, if the court has any doubt about the defamatory character of a statement, "the issue must be given to the jury for them to determine whether the defamatory meaning was understood by the recipient." *Gordon,* 489 A.2d at 1368. "Even where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, the issue must proceed to the jury. *Id.*

In the instant case, the allegation in the letter addressed to Mr. Emmert speaks for itself. The meaning of the statement can only be construed as an attack on Ms. Brown's honesty and integrity as a designer. The statement improperly attempts to undercut her fitness for conducting her trade and her reputation in the industry. Accordingly, even if there is some doubt as to the defamatory nature of the statement, it is for the jury is to make the final determination.

POINT II

SINCE THE DEFAMATORY STATEMENT OF WHICH
MS. BROWN COMPLAINS WAS NOT PERTINENT AND
MATERIAL TO PLAINTIFF'S COPYRIGHT
INFRINGEMENT CLAIM, IT CANNOT BE PRIVILEGED

The laws of Pennsylvania, under which Plaintiff asserts an absolute privilege, provide that to be privileged, a statement made in the regular course of

judicial proceedings must be "pertinent and material to the redress or relief sought." *See Post v. Mendel*, 507 A.2d 351 (Pa. 1986), cited in page 3 of Plaintiff's Brief (refusing to apply litigation privilege where court did not "regard the alleged defamatory letter. . .as having been issued in the regular course of judicial proceedings as a communication pertinent and material to the redress sought"); *see also Slater v. Marshall*, 895 F. Supp. 93 (E.D. Pa. 1995)

In its complaint, Plaintiff seeks statutory damages for Defendants' alleged infringement under Section 504 of the Copyright Act, 15 U.S.C. §504. On this motion, Plaintiff argues that the defamatory statement was pertinent and material to its claim for statutory damages because the maximum amount of such damages depends upon whether or not the infringement was committed willfully. In its brief, Plaintiff states that "[t]he allegedly defamatory statement in this case deals with the issue of willfulness of infringement by Defendants and, as such, is pertinent and material to the nature and extent of the damages recoverable by York." In paragraph 10 of its motion, Plaintiff states:

> 10. In a copyright infringement action, the copyright owner may elect to recover instead of actual damages or profits, an award of statutory damages in a sum of not less than $250 or more than $10,000 as the court considers just. 17 U.S.C.A. §504(c)(1). However, where the copyright owner can prove that the infringement was committed **willfully**, the court may increase the award of statutory damages to a sum of up to $50,000. *Id.* at 504(c)(2) (emphasis added).

9

While Plaintiff inaccurately quotes the current law (since the maximum recovery of statutory damages has been twice amended, first to $100,000 and most recently to $150,000), the defamatory statement could conceivably have been pertinent or material to a claim for statutory damages. However, as Plaintiff knew before its complaint was filed, and as Plaintiff's counsel should have known as well, the Copyright Act precludes any award of statutory damages in the instant case. And there can be no issue of willfulness of the alleged copyright infringement. In their Third Affirmative Defense, Defendants state that Plaintiff is not entitled to statutory damages or attorneys' fees under 17 U.S.C. §412(2) since Plaintiff did not register its claims of copyright prior to Defendants alleged infringement or within three months after publication.

17 U.S.C. §412 provides in material part that:

> [N]o award of statutory damages or of attorney's fees, as provided by Sections 504 and 505, shall be made for . . . (2) any infringement of copyright commenced after first publication and before the effective date of registration, unless such registration was made within three months after the first publication of the work.

The complaint alleges that the wallcovering and border which are the subjects of its copyrights were first published on October 25, 1999, and its copyrights were registered on February 8, 2001. In the Joint Case Management Plan [1.21(2)] the parties agreed that the Maxwell wallcovering, border and

sample book, which allegedly infringe Plaintiff's copyrights, "were available to the purchasing public before Plaintiff's copyrights were registered."

Thus, by its delay in registering its claims of copyright infringement, Plaintiff has foregone any right to statutory damages. In the absence of a claim for statutory damages, the issue of willful copyright infringement is not pertinent and material to the redress or relief sought.

## POINT III

### IN ANY EVENT, PLAINTIFF'S DEFAMATORY STATEMENT WAS NOT MADE IN THE REGULAR COURSE OF A JUDICIAL PROCEEDING

If Plaintiff had made the defamatory statement in its complaint, then the statement could have been privileged as having been made in the regular course of a judicial proceeding. Of course, if Plaintiff lacked a good faith basis for the statement, then sanctions would have been available under Rule 11.

Rule 11 does not, however, reach, statements not made in a pleading, and thus would afford no remedy to Ms. Brown if, as she believes, the defamatory statement in question had no good faith basis for its assertion.

While a letter from Plaintiff's counsel to Defendant's president forwarding a courtesy copy of a complaint was arguably sent in the regular course of a judicial proceeding, it would not seem to be in the regular course of such proceedings to include in the letter a statement defaming one of Defendant's employees,

particularly a statement having nothing to due with the issues properly raised by the complaint. *See Post, supra; see also Slater v. Marshall*, 895 F. Supp. 93 (E.D. Pa. 1995) (denying plaintiff's motion to dismiss defendant's counterclaim, finding judicial proceedings privilege inapplicable).

If Plaintiff is correct that a defamatory statement made in an attorney's letter is absolutely privileged, then the person injured by such a statement is without remedy either against the attorney who wrote the statement or the party who authorized it.

## CONCLUSION

There have been thousands of cases in which the owner of a copyright in a fabric or wallcovering design has asserted a claim of copyright infringement against an alleged infringer. In most of these cases, the defendant has been the company which was responsible for the production and sale of the allegedly infringing product. In few if any of these cases has an individual employee of that company been joined as a defendant.

Here, Plaintiff has not only joined Ms. Brown as a defendant but also has made a vicious attack upon her integrity which at the present stage of proceedings cannot be justified. Rather than face responsibility for this attack, Plaintiff seeks to hide behind a claim of privilege. Since the defamatory statement was not pertinent and material to any legally cognizable issue that Plaintiff may raise and

was not made in the regular course of a judicial proceeding, the Motion to Dismiss should be denied. Moreover, because Plaintiff lacks a good faith basis to recover the statutory damages upon which its claim of privilege is based, Ms. Brown should be awarded her reasonable attorney fees incurred in the defense of this motion.

                                                Respectfully submitted,

                                                Ronald P. Schiller
                                                Piper Marbury Rudnick & Wolfe, L.L.P.
                                                3400 Two Logan Square
                                                18th & Arch Streets
                                                Philadelphia, PA 19103
                                                (215) 656-3300
                                                     and
                                                Albert Robin
                                                Robin Blecker & Daley
                                                Attorneys for Defendant Jaima Brown
                                                330 Madison Ave
                                                New York, NY 10017
                                                (212) 682-9640

Dated: September 6, 2001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, a copy of the foregoing Defendant Jaima Brown's Brief In Opposition To Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) was served via first class mail, postage prepaid, upon:

> Bruce J. Wolstoncroft, Esquire
> Kendra D. McGuire, Esquire
> Barley, Snyder, Senft & Cohen, LLC
> Attorneys for Plaintiff
> York Wallcoverings, Inc.
> 126 East King Street
> Lancaster, PA  17602
> (717) 299-5201

_____
Ronald P. Schiller

Dated:  September 6, 2001