

(27)
RB 3/15/02

⬤ # ORIGINAL ⬤

2 TO CT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG

MAR 1 4 2002

MARY E. D'ANDREA, CLERK

| | | |
|---|---|---|
| YORK WALLCOVERINGS, INC. | : | |
| Plaintiff | : | No.: 1:CV:01-0793 |
| | : | |
| vs. | : | |
| | : | |
| S.A. MAXWELL COMPANY, INC. AND | : | (The Hon. Sylvia H. Rambo)✓ |
| JAIMA BROWN | : | |
| Defendants | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE ISSUANCE OF A PRELIMINARY INJUNCTION

Plaintiff York Wallcoverings, Inc. ("York") submits this Memorandum of Law in

Support of the Issuance of a Preliminary Injunction barring Defendant S.A. Maxwell Company,

Inc. ("Maxwell") from distributing any wallcovering, border or fabric that infringes York's

copyrighted Elephant Wallcovering and Border design.

## I.    FACTUAL BACKGROUND

In October of 1999, York placed on the market its Elephant Wallcovering and Border

design.  York expended considerable resources in developing this wallcovering and border

design, including the creative efforts of its in-house design studio.  The Elephant Wallcovering

and Border is a unique, exclusive and multi-faceted design.  As with other York wallcoverings,

the designs are marketed and sold through designer showrooms and retail stores throughout the

country.  York's Elephant Wallcovering and Border is featured in a collection entitled

"Passport."  The cover of the Passport sample book features the elephant from York's Elephant

Wallcovering.  <u>See</u> copy of Passport sample book cover, attached to Memorandum in Support of Application for Order to Show Cause as Exhibit B.

The cover of a wallcovering sample book is the primary factor in drawing a customer's attention to a collection of wallcoverings and serves as the primary reference point for the customer who wishes to find and view a wallcovering collection.  <u>See</u> Affidavit of LeRue Brown attached to Memorandum in Support of Application for Order to Show Cause as Exhibit C. Since its launch, York's Elephant Wallcovering and Border have enjoyed substantial popularity in the marketplace.  York has sold many thousands of rolls of wallcovering of the design and plans to sell many thousands of yards over the next several years.  Indeed, the Elephant Wallcovering and Border is one of the most popular designs York has on the market today.

In January 2001, Maxwell released and began distribution of a wallcovering, border and fabric design that is substantially similar to York's Elephant Wallcovering and Border. Defendant Jaima Brown ("Brown") is the Director of Design for Maxwell and directed the design of the infringing Maxwell wallcoverings, borders and fabric after seeing the York Elephant Wallcovering.  Ms. Brown gave a detailed "design brief" to William Carroll, the independently contracted artist hired by Ms. Brown and Maxwell to draw an elephant design for Maxwell.  In addition to the detailed design brief, Ms. Brown gave Mr. Carroll reference materials; a piece of York's elephant wallcovering was included in the reference materials.  Ms. Brown is unable to explain exactly how York's elephant wallcovering came into her possession; however, she admits that she drew Mr. Carroll's attention to specific aspects of York's elephant wallcovering.

1060233_1.DOC

2

York initiated suit alleging, inter alia, that Maxwell has improperly and unlawfully infringed York's exclusive rights to its copyrighted Elephant Wallcovering and Border design by distributing, marketing and selling substantially similar wallcovering, border and fabric designs produced largely by copying from York's proprietary designs. York seeks the issuance of a preliminary injunction prohibiting Maxwell from distributing any wallcovering, border or fabric that infringes York's copyrighted Elephant Wallcovering and Border design.

## II.    LEGAL ANALYSIS

Consideration of four factors governs the determination of a motion for preliminary injunctive relief: (1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff will suffer irreparable harm if the conduct complained of is not enjoined pending the final hearing; (3) the extent to which the defendant will be harmed if a preliminary injunction is entered; and (4) whether the public interest is served by issuance of a preliminary injunction. Opticians Ass'n v. Independent Opticians, 920 F.2d 187, 191-92 (3d Cir. 1990). If the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief, an injunction should issue.

### A.    Likelihood of Prevailing on the Merits

To prevail on a copyright infringement claim, a plaintiff must establish (a) ownership of a valid copyright and (b) "copying" by the defendant. CMM Cable Rep., Inc. v. Keymarket Communications, Inc., 870 F. Supp. 631 (M.D. Pa. 1994). York can establish both prongs of a copyright infringement claim in the instant matter.

1060233_1.DOC

A prima facie case is made out on the first element by submission of a certificate of copy right registration. Williams Electronics, Inc. v. Artic Internat'l Inc., 685 F.2d 870, 873 (3d Cir. 1982); Price v. Metzner, 574 F. Supp. 281, 287 (E.D. Pa. 1983). The certificate carries with it a presumption of copyright validity and ownership, and is prima facie evidence of the facts stated therein. Id. A defendant has the burden of overcoming this presumption. Id.

In the instant case, York has established that it is the exclusive owner of the copyright to the Elephant Wallcovering and Border. York has complied with all requirements of the Copyright Act and has certificates of registration for the designs. York is the exclusive owner of the copyright to the Elephant Wallcovering and Border by virtue of a Certificate of Originality and an Assignment of rights from Trisha Scullin dated January 20, 1999. A copy of the Assignment is attached hereto as Exhibit A. In compliance with the Copyright Act, York has Certificates of Registration for the designs issued by the Copyright Office under registration numbers VA1-064-203 and VA1-064-204, both effective February 12, 2001. The certificate for registration number VA1-064-203 was corrected to address a minor error in Section 2(a) according to Copyright Office procedures as evidenced by a supplementary Certificate of Registration number VA1-108-973, effective February 12, 2002. Copies of the registration certificates and supplementary registration certificate are attached as Exhibit A to York's Memorandum in Support of Application for Order to Show Cause. These certificates constitutes prima facie evidence of the validity of York's copyright and of the facts stated in the certificates and copyright registration. See supra.

1060233_1.DOC

4

Additionally, Plaintiff has produced facts through discovery which establish copying by Defendants in this case. The federal courts have recognized that it is rarely possible to prove copying through direct evidence. See e.g. Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1231 (3d Cir. 1986), cert. denied, 497 U.S. 1031 (1987). Therefore, it has been held that "copying may be proved inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." Id. at 1231-32.

In the instant case, Defendants' access to York's Elephant Wallcovering and Border designs is not contested. Indeed, Maxwell and Brown, the individual who directed the design of the infringing Maxwell wallcoverings, borders and fabric, admitted that they had access to York's Elephant Wallcovering. See Joint Case Management Plan submitted in this case. Brown also admitted to providing a piece of York's Elephant Wallcovering to William Carroll. As stated above, Brown specifically drew Mr. Carroll's attention to the copyrighted York Elephant Wallcovering and told him that she liked the texture and feel of the York Elephant Wallcovering. See copy of the relevant portion of Ms. Brown's deposition, p.67, lines 6 through p.68, line 21 (Exhibit 11 being the original piece of the York Elephant Wallcovering) attached to Memorandum in Support of Application for Order to Show Cause as Exhibit F.

Since Defendants admitted to having access to York's copyrighted Elephant Wallcovering, the sole question at issue is whether there is a substantial similarity between York's Elephant Wallcovering and Maxwell's wallcovering. See Whelan Associates, 797 F.2d

at 1234. York submits that Maxwell's wallcovering, borders and fabric are substantially similar to the York Elephant Wallcovering and Border.

Substantial similarity is determined by a two prong approach. First, the fact finder must decide whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making its own. Whelan, 797 F.2d at 1232. On this issue, expert testimony may be received to aid the trier of fact. Id. This has been referred to as the "extrinsic" test of substantial similarity. Id. The second test has been termed the "intrinsic" test of substantial similarity. Id. It queries, from a lay perspective, whether the copying was an unlawful appropriation of the copyrighted work. Id. at 1233. "The *sine qua non* of the ordinary observer test . . . is the overall similarities rather than the minute differences between the two works." Atari, Inc. v. North Am. Philips Consumer Elec. Corp., 672 F.2d 607, 618 (7th Cir. 1982), *cert. denied*, 459 U.S. 880 (1982); Accord Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 907 (3d Cir. 1975), *cert. denied*, 423 U.S. 863, 907 (1975). No bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity in the context of copyright infringement. Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987).

The designs at issue are remarkably similar. Similarities in the designs include subject matter, elephants, leaves, texture, color (in 2 colorways), use of color, placement of color, scale, and the use of lattice or scroll work in the design. The overall aesthetic look and feel of the designs are similar. The only dissimilarity is Maxwell's use of palm trees.

1060233_1.DOC

In the instant case, the extent to which Maxwell has duplicated York's design is evident by a simple, visual comparison of the two designs. Maxwell's infringing designs appear in its "Sesquicentennial" sample book in three color ways, or color schemes, that closely match two of York's color ways. Maxwell has also produced fabric on which the infringing design is depicted. Maxwell's Sesquicentennial sample book also features the elephant from York's Elephant Wallcovering. See copy of Sesquicentennial sample book cover attached to Memorandum in Support of Application for Order to Show Cause as Exhibit D. It was through viewing a Maxwell advertisement featuring the ornamental elephant found on the cover of the Sesquicentennial sample book that employees of York first began to suspect that copying was taking place. See advertisement attached to Memorandum in Support of Application for Order to Show Cause as Exhibit E. The substantial similarities in the covers of the sample books cause consumer confusion as to the origin of the design and the company who offers the design.

Proof of copying by establishing access and substantial similarity raises a presumption of copying. Blue Fish Clothing, Inc. v. Kat Prints, 1991 WL 71113 at *7 (E.D. Pa. 1991). A copy of the Court's Opinion is attached hereto as Exhibit B. Once a presumption of copying has been raised, the burden shifts to the defendant to prove that its work was not copied, but was instead an independent creation. Id. (citations omitted). Only if the defendant offers evidence of independent creation does the burden shift back to the plaintiff to prove that the defendant did, in fact, copy the protected material. Id. (citations omitted).

Maxwell may attempt to assert that it developed its wallcovering independent of York's Elephant Wallcovering. Any such contention is belied by several facts, including the fact that

1060233_1.DOC

the York Elephant Wallcovering was on the market before the Maxwell design was even commissioned; that Brown admitted to providing a piece of York's Elephant Wallcovering to William Carroll; that Brown specifically drew Mr. Carroll's attention to the copyrighted York Elephant Wallcovering and told him that she liked the texture and feel of the York Elephant Wallcovering; and that Carroll had the York Elephant Wallcovering in his possession when he drew the Maxwell design. By Brown's own testimony, both the person directing the design of the infringing work and the artiest drawing the infringing design not only had possession of York's Elephant Wallcovering, but discussed it during the design process. Given these facts, York submits that it cannot be concluded that Maxwell's product was created independent of York's Elephant Wallcovering or that Maxwell drew from common sources that were in the public domain.

Based on the foregoing, York will establish a substantial likelihood of prevailing on the merits of its copyright infringement claim. Accordingly, the first prong necessary for the issuance of a preliminary injunction will be satisfied.

**B.    Irreparable Harm**

The general rule in equity is that harm is "irreparable" when it cannot be adequately compensated in damages because of the nature of the injury itself or because of the nature of the right or property that is injured or because there exists no certain pecuniary standard for measurement of damages. Price v. Metzner, 574 F. Supp. 281, 289 (E.D. Pa. 1983) (citations omitted). Future injury of uncertain date and incalculable magnitude is "irreparable harm" and protection from such an injury is a legitimate end of injunctive relief. Id.

1060233_1.DOC

A copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm. CMM Cable, 870 F. Supp. at 639. Indeed, there is a rebuttable presumption of irreparable harm once a reasonable likelihood of proving copyright infringement is established. CMM Cable, supra, citing Marco v. Accent Publishing Co., 969 F.2d 1547, 1553 (3d Cir. 1992).

The Price case is particularly instructive and analogous. The case involved boxed playing cards; the backs of the box featured mallard ducks in flight while the lid of each box depicted a mallard duck in a "floating" position. The item was one of the Plaintiff's "hottest" selling products. Defendants offered a strikingly similar product for sale at a much reduced price. In finding that Plaintiff was irreparably harmed, the Court focused on "the serious, long-lasting and incalculable harm to Price's competitive position vis-à-vis the defendants". Price, 574 F. Supp. at 289. The Court further noted that:

> If an injunction does not issue, Price will be denied the reputational acclaim and commercial benefit which it should receive in connection with developing this popular product. Direct competition and selling price disparity between plaintiff and defendant have been found to warrant preliminary equitable relief in copyright infringement situations. (citations omitted). Id. at 289.

Finally, in issuing the injunction, the Court noted that:

> The damage that Price will suffer if an injunction does not issue includes more than the mere monetary value of lost sales of its duck card box. Furthermore, the amount of damages necessary to compensate Price for these lost sales will be impossible to calculate accurately. Id. at 290.

1060233_1.DOC

As in <u>Price</u>, York's competitive position is compromised by Maxwell's less expensive, more cheaply made product. York is being denied the reputational acclaim and commercial benefit which it should receive in connection with developing its very popular product.

Since being placed on the market, the copyrighted York Elephant Wallcovering and Border have been very popular products for York. However, competition from Maxwell cuts into York's sales, and will continue to do so unless Maxwell is enjoined from selling its infringing wallcovering. Maxwell's wallcoverings are offered on a nationwide basis for sale to the same general types of customers and at the same types of retail locations where York's wallcovering products are sold. Through its sales of the infringing design, Maxwell wrongfully diverted sales to itself from York. The continued presence in the market of the infringing design compromises York's ability to fully exploit its design and derivative works drawn therefrom. Maxwell's actions also irreparably injure York's goodwill and reputation in the industry. Although York is known as an innovator in color and design in the wallcovering market, Maxwell's widespread dissemination of the infringing design gives the impression that York's designs are neither distinct nor innovative. If York is perceived as a producer of look-alike wallcoverings, it will suffer a loss which is not quantifiable and will, thereby, suffer irreparable harm. There also exists a substantial risk that the public will be confused as to the source of origin of York's Elephant Wallcovering since Maxwell's infringing wallcovering is so strikingly similar. <u>See</u> <u>Opticians Ass'n</u>, 920 F.2d at 196 (a finding of irreparable harm can be based on likely confusion). Such confusion because of copyright infringement could deprive York of the capacity to control its own reputation and thereby cause further irreparable injury to York since

the infringing wallcovering is a less expensive, more cheaply made product than York's Elephant Wallcovering and Border. Maxwell utilized a less expensive, less sophisticated method of printing to print its Elephant Wallcovering and Border. This was not an artistic or design related decision. Rather, the printing process used by Maxwell was the only printing process used by them at the time. Additionally, the Maxwell product is printed on vinyl. Maxwell's infringing products are offered at a much lower price point than York's products.

As set forth above, York can establish a prima facie case of copyright infringement. Therefore, irreparable injury should be presumed without the need for detailed proof of such injury. See supra. In addition to this presumption though, the evidence produced through discovery buttresses the presumption that York will be irreparably harmed if an injunction is not entered.

The damage that York will suffer if an injunction does not issue includes far more than the mere monetary value of lost sales of its Elephant Wallcovering and Border. Furthermore, the amount of damages necessary to compensate York for its past and future lost sales will be difficult to calculate accurately. Accordingly, York has suffered irreparable injury as a result of Maxwell's actions and Maxwell should be enjoined from marketing, selling or distributing its infringing wallcovering.

1060233_1.DOC

## C.    The Balance of Harm

It has been held that a balancing of hardships need not be conducted when the plaintiff has already shown a likelihood of success on the merits of a copyright infringement action. Apple Computer v. Franklin Computer, 714 F.2d 1240, 1254-55 (3d Cir. 1983), *cert. denied*, 464 U.S. 1033 (1984). Since York will show a likelihood of success on the merits, the equities need not be balanced here for a preliminary injunction to issue in this case.

Even if this Court determines that a balancing of the hardships is necessary in this case, the facts of record support the issuance of a preliminary injunction in this matter. The typical lifespan of a wallcovering book is approximately three (3) years. See Affidavit of LeRue Brown attached to Memorandum in Support of Application for Order to Show Cause as Exhibit C. Accordingly, by the time this action is called for trial (during the September 2002 trial term), injunctive relief, as provided for in the Copyright Statutes, will be a form of relief which, in fact, offers Plaintiff no relief and has no deterrent effect on Maxwell. The vast majority of sales from the Sesquicentennial sample book would have occurred by the time this matter comes to trial. At this juncture in the litigation, considering the "life" of the Sesquicentennial sample book, the harm to York should the infringing material remain on the market is far greater than any harm to Maxwell. Accordingly, York seeks to have Maxwell preliminarily enjoined from selling or distributing the infringing designs pending trial on the merits.

1060233_1.DOC

**D.**    **The Public Interest**

In determining whether a preliminary injunction should issue, the Court must also consider whether granting the relief is in the public interest. Opticians Ass'n, 920 F.2d at 191-92. The public interest weighs heavily in favor of a preliminary injunction in this matter.

Courts in this Circuit have held that the public interest in indeed served by allowing copyright owners to protect their work in accordance with the copyright laws. Apple Computer v. Franklin Computer, 714 F.2d 1240, 1255 (3d Cir. 1983), *cert. denied*, 464 U.S. 1033 (1984) ("it is virtually axiomatic that the public interest can only be served by upholding copyright protections, and correspondingly, preventing the misappropriation of the skills, creative energies and resources which are invested in the protected work."). Moreover, preventing the pirating of creative energies and resources that are invested in protected works has been found to be in the interest of the public. Dam Things from Denmark v. Russ Berrie & Co., Inc., 173 F. Supp.2d 277, 291 (D.N.J. 2001) (citations omitted).

To deny injunctive relief in this case would serve no public purpose. In fact, by allowing Maxwell to continue selling its infringing wallcovering, the public interest in upholding copyright protections will be severely undermined. Accordingly, as with the others, this factor weighs in favor of the issuance of a preliminary injunction in this matter.

### III.    <u>CONCLUSION</u>

Based on the above cited authorities and reasoning, Plaintiff York Wallcoverings respectfully requests that Defendants S.A. Maxwell Company, Inc. be enjoined from selling, distributing and/or marketing its infringing Elephant wallcovering, border and fabric designs pending trial on the merits.

BARLEY, SNYDER, SENFT & COHEN, LLC

Date: _____3/14/02_____          BY: _____
                                          Bruce J. Wolstoncroft, Esquire
                                          Kendra D. McGuire, Esquire
                                          Attorneys for Plaintiff
                                          York Wallcoverings, Inc.

                                          126 East King Street
                                          Lancaster, PA  17602
                                          (717) 299-5201
                                          Court I.D. No. 43923
                                          Court I.D. No. 50919

1060233_1.DOC

**YORK**
WALLCOVERINGS

*COPY*

EXHIBIT A
18 (?)    7P8

## Certificate of Originality & Assignment of Rights

I hereby certify and warrant that the design identified as ___PJS943___ is either:
(Please check one block.)

☑ An original work of art by me, not based on nor derived from any copy-righted or known prior work;

☐ A work of art, the original source of which is identified as _____; this is a design for which I alone have all rights, title, and interest.

I further certify and warrant that I alone have all rights, title, and interest in the aforesaid design, with the right and capacity to sell, assign, and transfer the same.

In consideration of the sum of ___$110___ dollars ($ _____) paid to me by York Wallcoverings, Inc., the receipt of which I hereby acknowledge, I hereby sell, assign, and transfer to York Wallcoverings, Inc., all ownership rights and title in and to the aforesaid design with the aforesaid certification and warranty.

___P. Scullin___    ___20.11.99___
Signature of Artist / Date

Company Name & Address:
TRICIA SCULLIN    BANAPSHE
SCITH
135, LADYBANK RD,
MICKLEOVER, DERBY, DE3 5QF.

(This document is to be used when an original design is purchased directly from the artist.)

(717) 846-4456 • FAX (717) 843-5624

$\mathcal{B}$

1991 WL 71113
(Cite as: 1991 WL 71113 (E.D.Pa.))

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

BLUE FISH CLOTHING, INC.

v.

KAT PRINTS and Kathleen Thompson.

CIV. A. No. 91-1511.

April 29, 1991.

Zachary T. Wobensmith, III, Philadelphia, Pa., for plaintiff.

Lewis F. Gould, Jr. Eckert, Seamans, Cherin & Mellott, Philadelphia, Pa., for defendant.

*MEMORANDUM*

WALDMAN, District Judge.

*1 The present action was brought under the Copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.,* and the Lanham Act, 15 U.S.C. §§ 1125 *et seq.* The plaintiff manufactures clothing with various designs affixed thereto. Plaintiff alleges that it has copyright protection in those designs. Plaintiff alleges that defendant Kathleen Thompson is a former employee of plaintiff Blue Fish and that after she left, she formed the defendant sole proprietorship Kat Prints. Plaintiff alleges that the defendants have and continue to manufacture and sell garments bearing the names, likeness, logos, label placement and copyrighted art work of Blue Fish.

Presently, before the court is plaintiff's Motion for a Preliminary Injunction and defendants' Motion to Dismiss Claim 1 and defendants' Motion for a More Definite Statement. Defendants' motions were filed just before the court held a hearing on plaintiff's motion for preliminary injunction on April 17, 1991.

I. *MOTION TO DISMISS*

Defendants move to dismiss plaintiff's copyright infringement claim in count one for failure to state a claim upon which relief can be granted and for lack of subject matter. The grounds of defendants' motion is that plaintiff has failed to register its copyright with the Copyright Office. Plaintiff

contends that its registration of its 1989 and 1990 catalogs, which included pictures of its art work, is sufficient.

Copyright registration under 17 U.S.C. § 411(a) is a condition precedent to filing an infringement action. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838, 850 (D.Mass.1986); *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984). It has been noted that although the registration is a mere technicality, it is a prerequisite to the court's jurisdiction. *Id.* at 1182 ; *see also Russell v. Trimfit, Inc.,* 428 F.Supp. 91, 93 (E.D.Pa.1977).

In the present case, plaintiff has filed for and received two registrations, including TX-2-786-866 for its 1989 catalog and TX-2-786-865 for its 1990 catalog. The 1989 catalog contains a picture of the design affixed to the T- shirt introduced as an exhibit and marked as Px-7. [FN1] Defendants contend that plaintiff's failure to separately register the design itself is a bar to plaintiff's action.

The cases relied on by the defendants are inapposite. In *Kashins v. Lightmakers, Inc.,* 155 F.Supp. 202 (S.D.N.Y.1956), the court dismissed plaintiff's infringement action where the defendant was manufacturing lamps which were similar to those of the plaintiff and which plaintiff had pictured in its catalog. The court stated that "[t]he fact that defendant's lamps were copied from a photograph in plaintiff's catalogue does not make the lamps themselves an infringement because plaintiff's product which its catalogue portrayed was neither copyrighted nor patented." *Id.* at 202. The court went on to find that it was the "design" of the lamps which was allegedly copied and that the design is only incidentally reflected in the illustration in the catalogue. *Id.* at 203.

*2 In *Russell v. Trimfit, Inc.,* 428 F.Supp. 91 (E.D.Pa.1977), the court held that plaintiff's copyrighted drawings of socks did not preclude the defendant from manufacturing similar leg wear. The court found that plaintiff's theory of infringement would extend its copyright protection to the "idea" of the items and therefore well beyond their "expression." The court stated "[i]n this case we have encountered the difficulty in distinguishing between the idea and the expression of the idea." *Id.* at 94. The court noted that it is well established

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

that the copyright of a dress "design" does not confer a monopoly of the idea upon the copyright owner. *Id.* at 94 (citing *Jack Adelman, Inc. v. Sonner & Gordon, Inc,* 112 F.Supp. 187 (S.D.N.Y.1934).

Protection has, however, been extended to the designs affixed or applied to a dress or other clothing. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corporation,* 274 F.2d 487 (2d Cir.1960). In *Peter Pan,* the court explained:

The test for infringement of a copyright is of necessity vague. In the case of verbal 'works' it is well settled that although the 'proprietor's' monopoly extends beyond an exact reproduction of the words, there can be no copyright in the 'ideas' disclosed but only in their 'expression.' Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc. In the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible. No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to escape infringement. In deciding that question one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used.

*Id.* at 489.

Thus, plaintiff can seek copyright protection in the designs it has affixed to various garments. The question remains, however, whether plaintiff's copyright registration of its catalog amounted to a registration of the designs included therein.

For administrative purposes the Copyright Office has designated four separate categories for copyright registration: class TX for nondramatic literary works, class PA for works of the performing arts, class VA for works of the visual arts and class SR for sound recordings. 37 C.F.R. § 202.3(b). The regulations also provide for a method of registering multiple works with a single application. Specifically, the regulations provide that:

For the purposes of registration on a single

application and upon registration of a single registration fee, the following shall be considered a single work:

In the case of published works: All copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same.

*3 37 C.F.R. § 202.3(b)(3). There are very few cases addressing this regulation or the issue presently before the court. In *Howard v. Sterchi,* 725 F.Supp. 1572 (N.D.Ga.1989), the court held that by registering her plan book, plaintiff effectively registered the home plans which were included therein. Specifically, the court stated "the copyright registration for a compilation should arguably serve as registration for its components." *Id.* at 1576. The court, therefore, denied the defendant's motion to dismiss based on the failure to register. Similarly, in *Lotus Development Corporation v. Paperback Software International,* 740 F.Supp. 37 (D.Mass.1990), the court held that plaintiff's literary TX registration of its computer software effectively included a registration of the textual screen displays which would be produced by the program. *Id.* at 81-82 (citing 37 C.F.R. § 202.3 ). The cases suggest that a liberal application of 37 C.F.R. § 202.3 is appropriate given that copyright registration is generally considered a technical formality.

In the present case, the court finds that the plaintiff's designs are copyrightable, *Peter Pan Fabrics, supra,* and that the design affixed to plaintiff's exhibit Px-7 and explicitly displayed in the registered 1989 catalog is recognizable as a self-contained work within the meaning of 37 C.F.R. § 202.3(b)(3). Thus, the court finds that plaintiff has met the registration requirement and, accordingly, the defendants' motion to dismiss will be denied insofar as it seeks to dismiss count one.

Defendants also seek to dismiss count three to the extent that plaintiff claims protection under common law copyright. On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of

●                              ●

copyright as specified by §§ 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by the federal copyright law. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. 17 U.S.C. § 301(a) (1982). *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976). The plain meaning of § 301 is that the Act abolished common law copyright by preemption. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 501 F.Supp. 848, 850 (S.D.N.Y.1980); *Strout Realty, Inc. v. County 22 Real Estate Corp.,* 493 F.Supp. 997, 999 (W.D.Mo.1980).

The Act establishes a two-part test for preemption. State law is preempted when: (1) the nature of the work of authorship in which the rights are claimed comes within the "subject matter of copyright" as defined in §§ 102 and 103 of the Act; and (2) the rights granted under the state law are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 of the Act. *See Harper & Row,* 501 F.Supp. at 850. Common law copyright is, in essence, a right of first publication. *Birnbaum v. United States,* 588 F.2d 319, 326 (2d Cir.1978).

*4 It is clear that the plaintiff's designs come within the protection of § 102(a)(5), extending protection to pictorial and graphic works. Indeed, plaintiff has not even offered any argument on its common law copyright claim in its opposition papers.

Accordingly, defendants' motion to dismiss will be granted insofar as it seeks dismissal of that portion of count three which is based on common law copyright.

## II. *MOTION FOR A MORE DEFINITE STATEMENT*

Defendants also move for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Under Rule 12(e), a motion for a more definite statement is proper "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." If a complaint meets the standards of Fed.R.Civ.P. 8, and notifies the defendant of the nature of the claim against him, a motion for more definite statement will not be granted. *McCaw v.*

*Motorists Mutual Insurance Co.,* No. 89-8868 (E.D.Pa. May 7, 1990) (1990 Westlaw 63608); *Blue Line Coal Co. v. Equibank,* 683 F.Supp. 493, 498 (E.D.Pa.1988); *Wheeler v. United States Postal Service,* 120 F.R.D. 487, 488 (M.D.Pa.1987); 2A J. Moore, J. Lucas, & G. Grotheer, Moore's Federal Practice ¶ 12.18[1] (2d Ed.1989).

Rule 8(a) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8 does not require a detailed, precise and lengthy pleading. Rather, the liberal pleading policy of the Federal Rules of Civil Procedure only requires notice pleading. *Wheeler, supra.*

The court finds that the three counts in plaintiff's fourteen-page complaint and the exhibits included therein contain sufficient facts to put the defendants on notice of the claims asserted against them. Accordingly, defendants' motion under Rule 12(e) will be denied.

## III. *MOTION FOR PRELIMINARY INJUNCTION*

On April 17, 1991, the court held an evidentiary hearing on the plaintiff's Motion for Preliminary Injunction. The court makes the following findings of fact and conclusions of law.

### A. *Findings of Fact*

1. Sometime in the summer of 1986, Jennifer Barclay and Anne Flynn formed the plaintiff company, Blue Fish, to design and produce clothing.

2. They originally worked out of a garage, and moved to larger facilities after they participated in a trade show in November of 1986 where they received a large number of orders.

3. Blue Fish currently has a retail store and studio in Frenchtown, New Jersey and a store and studio in Taos, New Mexico. Blue Fish also sells to approximately 90 other retailers.

4. Ms. Flynn generally takes care of the office management, while Ms. Barclay does the design work. Ms. Barclay also takes care of the promotional aspects of the business.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

5. In 1987, Flynn and Barclay hired Kathleen Thompson and Michelle Calvert to provide additional support.

6. Ms. Thompson's duties included block printing on the clothing and various other duties.

*5 7. Ms. Thompson worked for Blue Fish for approximately one year, leaving at the end of 1987.

8. In 1989, Blue Fish produced a catalog depicting various designs that it had produced to affix to articles of clothing. The catalog was registered with the Copyright Office and Blue Fish received a Registration Certificate, TX-2- 786-866. [FN2]

9. In 1990, Blue Fish produced a second catalog containing pictures of models wearing various Blue Fish clothing with various designs affixed thereto. The 1990 catalog was registered with the Copyright Office and Blue Fish received Registration Certificate, TX-2-786-865. [FN3]

10. In the spring of 1990, defendant Thompson began doing business as "Kat Prints."

11. Thompson and her fiance, Vincent Chizolti, comprise the entire business which is operated out of Ms. Thompson's parents' farm.

12. Like Blue Fish, Kat Prints designs and imprints clothing, using block printing techniques.

13. On January 8, 1991, while attending the 55th International Fashion Boutique Show in New York City, Ms. Flynn noticed that Kathleen Thompson had a booth there in which she displayed Kat Prints' products.

14. After the show, Ms. Flynn had one of her employees, Terriann Fleischman, call and order six garments from defendant Kat Prints. Ms. Fleischman received six T-shirts on January 14, 1991 and gave them to Ms. Flynn.

15. The first garment, introduced by plaintiff as Px-5, is a blue T-shirt with a design affixed to the front. The design includes two vertically placed criss-crossed fish in black outline on a white smeared background. The fish are surrounded by a rectangular painted "frame" made up of green and grey lines and diamonds. The back of the shirt

includes a painted circular picture of the earth with the words "Kat Printz" written through it. The back also has another vertically placed fish in black.

16. The second garment, introduced by plaintiff as Px-6, is a purple-blue T- shirt with a design affixed to the front. The design includes two horizontally placed narrow fish in solid black on a white smeared background. The fish are also surrounded by a rectangular frame comprised of a black and green geometrical design.

17. Both of these T-shirts were manufactured by the defendants.

18. Plaintiff produced a third T-shirt, introduced as exhibit Px-7, manufactured by Blue Fish. It contained a design affixed to the front of the shirt with two vertical criss-crossed fish in black outline on a white smeared rectangular background. Although the fish are not surrounded by a frame-like design, they are surrounded by various geometric symbols, including dots, triangles and squares in a rectangular pattern. The back of the shirt includes an sown-on label in black and white containing the words "Blue Fish."

19. The design affixed to the front of the Blue Fish T-shirt was displayed in the 1989 catalog, but not the 1990 catalog.

20. The design affixed to the front of the Blue Fish T-shirt and displayed in the 1989 catalog and the other designs in that catalog are easily recognizable as independent and distinct elements of that catalog.

*6 21. The design affixed to the Kat Prints T-shirt, Px-5, is substantially similar to the design affixed to the Blue-Fish T-shirt, Px-7, and to the same design displayed in the 1989 catalog. The designs are not, however, so strikingly similar as to preclude the possibility of independent creation.

22. The design affixed to defendant's second shirt, Px-6, is not substantially similar to the Blue Fish shirt Px-7 or any of the designs in either catalog.

23. Ms. Thompson had access to those Blue Fish designs which were in existence at or before the end of 1987.

24. The record does not establish when the design

affixed to the Blue Fish T-shirt, Px-7, was created. [FN4]

25. Both Blue Fish catalogs were produced after Ms. Thompson left its employ and she never saw a Blue Fish catalog before the initiation of this law suit.

26. Defendant Thompson obtained the idea for the designs on her T-shirts, PX-5 and Px-6, in 1990 from pictures she saw in a children's book and the National Geographic magazine.

27. In 1989, plaintiff Blue Fish had approximately $1.6 million in sales and $1.9 million in 1990.

28. Defendants have produced approximately 50-75 T-shirts bearing the design affixed to Px-5. [FN5]

29. Defendants have produced approximately 30 T-shirts bearing the design affixed to Px-6.

30. Defendants have produced 200 different designs since starting their business.

B. *Analysis*

To obtain a preliminary injunction a plaintiff must demonstrate: (1) a reasonable probability of success on the merits, (2) irreparable injury, (3) the improbability of harm to other interested parties and (4) that the public interest will be served. *Delaware River Port Authority v. Transamerica Trailer Transport, Inc.,* 501 F.2d 917, 919-20 (3d Cir.1974). The circumstances presented by copyright infringement, however, are sufficiently unique as to obviate the necessity of an irreparable harm showing. *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254, (3d Cir.1983), *cert. denied,* 464 U.S. 1033 (1984). The public interest underlying the copyright law requires a presumption of irreparable harm. *Id.* at 1254. [FN6]

The plaintiff in a copyright infringement action must establish (1) his ownership of the copyright and (2) copying by defendant or a person acting on the defendant's behalf. *Southern Bell Telephone and Telegraph Company v. Associated Telephone Directory Publishers,* 756 F.2d 801, 810 (11th Cir.1985); *Ferguson v. National Broadcasting Company,* 584 F.2d 111 (5th Cir.1978); *Testa v.*

*Janssen,* 492 F.Supp. 198, 202 (W.D.Pa.1980); 3 M. Nimmer, Copyright § 13.01 (1985).

A prima facie case is made out on the first element by submission of a certificate of copyright registration. This certificate carries with it a presumption of copyright validity and ownership, and is prima facie evidence of the facts stated therein. *Williams Electronics, Inc. v. Artic International, Inc.,* 685 F.2d 870, 873 (3d Cir.1982) ; *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 n. 1 (2d Cir.1977); 17 U.S.C. § 410(c). Defendant has the burden of overcoming this presumption. *Williams, supra,* at 873.

*7 The second element plaintiff must prove to sustain a copyright infringement claim is copying. Due to the difficulty of obtaining direct evidence that one party copied another's work, copying may be proven circumstantially by showing access and substantial similarity. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982); *Ferguson,* 584 F.2d at 113; *M.S.R. Imports, Inc. v. R.E. Greenspan Company, Inc.,* 220 U.S.P.Q. 361, 370-71 (E.D.Pa.1983); *Testa,* 492 F.Supp. at 202. Proof of copying by establishing access and substantial similarity merely raises a presumption of copying.

Once this is done, the burden shifts to the defendant to prove that his work was not copied, but was instead an independent creation, *see Original Appalachian Artworks,* 684 F.2d at 829 and *M.S.R. Imports,* 220 U.S.P.Q. at 371. If the "defendant offers evidence of independent creation, the plaintiff has the burden of proving that the defendant in fact copied the protected material." *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981). [FN7] In this case, defendants offered such evidence of independent creation which the court has credited in Finding Number 26. Plaintiff thereafter did not prove that Ms. Thompson in fact copied its design.

"Substantial similarity" is present when the average lay observer would recognize the alleged infringing copy as having been appropriated from the protected work. *M.S.R. Imports,* 220 U.S.P.Q. at 372 (citing *Original Appalachian Artworks,* 684 F.2d at 829):

Access has been defined as "a reasonable opportunity to copy." *M.S.R. Imports,* 220

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

U.S.P.Q. at 371; *Testa,* 492 F.Supp. at 202; 3 M. Nimmer, Copyright § 13.02[A]. Although circumstantial evidence is sufficient to establish access, plaintiff's evidence must extend beyond mere speculation or conjecture and must show that the defendant's opportunity to view the copyrighted work exists by a reasonable possibility, not a bare possibility. *M.S.R. Imports,* 220 U.S.P.Q. at 371; *Testa,* 492 F.Supp. at 202.

Even if a plaintiff cannot prove access, copying may be established by a showing that the works are "so strikingly similar as to preclude the possibility of independent creation." *Ferguson,* 584 F.2d at 113; *M.S.R. Imports,* 220 U.S.P.Q. at 371; *Testa,* 492 F.Supp. at 203. To establish that similarities are striking, plaintiff must show that "such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Association of American Medical Colleges v. Mikaelian,* 571 F.Supp. 144, 151 (E.D.Pa.1983), *affirmed,* 734 F.2d 3 (3d Cir.1984); *Testa,* 492 F.Supp. at 203; *Stratchborneo v. Arc Music Corporation,* 357 F.Supp. 1393, 1403 (S.D.N.Y.1973). "[S]triking similarity simply means that in human experience it is virtually impossible that the two works could have been independently created." 3 M. Nimmer, Copyright § 13.02[B] n. 20. Works need not be exactly identical to be strikingly similar. *See Testa,* 492 F.Supp. at 203.

*8 While some courts require expert testimony to establish striking similarity, *see Testa, supra,* at 203, other courts regard such testimony as unnecessary, at least in cases where the subject matter is not in a technical field such that the trier of fact is unable to make the determination. *See Kent v. Revere,* No. 84-798-18 (M.D.Fla. Oct. 28, 1985) (1985 Westlaw 6453); *M.S.R. Imports,* 220 U.S.P.Q. at 371; 3 M. Nimmer, Copyright § 13.02 [B].

C. *Conclusions of Law*

1. The Court has jurisdiction over this copyright action pursuant to 28 U.S.C. § 1338(a).

2. The Blue Fish designs displayed in its 1989 catalog were effectively registered when the catalog was registered. The copyright validity of those designs is thus presumed. Defendants have not rebutted this presumption.

3. While plaintiff has shown substantial although not striking similarity between one of the designs in the 1989 catalog and one of defendants' designs, plaintiff has failed to establish access by Ms. Thompson, who left plaintiff's employ in 1987.

4. Defendants have established that their designs were independently created.

5. Plaintiff has failed to establish copying.

6. Plaintiff has failed to establish a likelihood of success on the merits.

Accordingly, plaintiff's motion for a preliminary injunction will be denied.

Appropriate orders will be entered.

*ORDER*

AND NOW, this 29th day of April, 1991, upon consideration of defendants' Motion for A More Definite Statement pursuant to Fed.R.Civ.P. 12(e) and plaintiff's response thereto, and in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED that said Motion is DENIED.

*ORDER*

AND NOW, this 29th day of April, 1991, upon consideration of defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and plaintiff's response thereto, and in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part as follows:

(1) Defendants' motion to dismiss is GRANTED insofar as it seeks dismissal of that portion of count three which is based on common law copyright;

(2) Defendants' motion is otherwise DENIED.

*ORDER*

AND NOW, this 29th day of April, 1991, upon consideration of plaintiff's Motion for Temporary Restraining Order and for a Preliminary Injunction and in accordance with the accompanying Memorandum containing Findings of Fact and

Conclusions of Law following a hearing thereon on April 17, 1991, IT IS HEREBY ORDERED that said Motion is DENIED.

FN1. The art work appearing on Px-7 does not appear in the 1990 catalog.

FN2. The 1989 catalog was introduced by the plaintiffs as exhibit Px- 3 and the Registration Certificate was introduced as Px-1.

FN3. The 1990 catalog was introduced as exhibit Px-4 and the Registration Certificate was introduced as exhibit Px-2.

FN4. The was no evidence offered by the plaintiff as to when the design was created. On cross-examination, Ms. Flynn testified that she did not know when Px-7 was printed.

FN5. This is the design which is similar to the Blue Fish T-shirt, Px-7.

FN6. In *Kontes Glass Co. v. Lab Glass, Inc.,* 373 F.2d 319, 320-21 (3d Cir.1967), the Third Circuit adopted an inverse relationship approach to the irreparable harm issue, suggesting that the strength of the required showing of irreparable injury varies inversely with the strength of plaintiff's showing of a likelihood of success on the merits. Subsequently, in *Apple Computer,* the Third Circuit stated that the approach taken in *Kontes* is "best suited to those cases where the injury from copying can be fairly considered minimal, limited or conjectural." 714 F.2d 1254.

FN7. "A copyright gives protection from copying only; a person working independently would not infringe a copyright even though his resulting work was substantially identical to a copyrighted work." *Russell v. Trimfit, Inc., supra.*

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum in Support of Application for an Order to Show Cause has been served this _14th_ day of _March_, 2002, by first-class mail, postage pre-paid, upon:

> Albert Robin, Esquire
> Robin, Blecker & Daley
> 330 Madison Avenue
> 2nd Floor
> New York, NY  10017
>
> Ronald P. Schiller, Esquire
> Piper, Marbury, Rudnick & Wolfe, LLP
> 3400 Two Logan Square
> 18th & Arch Streets
> Philadelphia, PA  19103-2762
>
> Joseph L. Turchi, Esquire
> Rawle & Henderson, LLP
> The Widener Building
> One South Penn Square
> Philadelphia, PA  19107

BARLEY, SNYDER, SENFT & COHEN, LLC

By: _____

Bruce J. Wolstoncroft, Esquire
Kendra D. McGuire, Esquire
Attorneys for Plaintiff
York Wallcoverings, Inc.

126 East King Street
Lancaster, PA  17602-2893
Court I.D. No. 43923
Court I.D. No. 50919

1060233_1.DOC