ORIGINAL

FILED

APR 1 5 2002

PER _____
HARRISBURG, PA  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORK WALLCOVERINGS, INC.                    :
                       Plaintiff    :    No.:  1:CV:01-0793

       vs.                                          :

S.A. MAXWELL COMPANY, INC. AND         :    (The Hon. Sylvia H. Rambo)
JAIMA BROWN                                   :
                Defendants   :

## REPLY BRIEF IN SUPPORT OF
## THE ISSUANCE OF A PRELIMINARY INJUNCTION

In their Memorandum in Opposition to the Motion for a Preliminary Injunction, Defendants make several arguments which require a response.  Therefore, Plaintiff York Wallcoverings ("York") submits this Reply Brief in response to Defendants' Memorandum in Opposition to the Motion for a Preliminary Injunction and in further support of the issuance of a preliminary injunction in this case.  York also incorporates by reference the arguments made and authorities cited in its original Memorandum of Law as though they were set forth in full herein.

### A.      Likelihood of Prevailing on the Merits

Initially, Defendants argue that York is not entitled to a presumption of copyright validity and has not sustained its burden of proving that its copyright in the elephant wallcovering and border design is valid.  Maxwell misstates the order of burdens of proof.  It is well settled a copyright plaintiff is entitled to a presumption of validity in its copyright and the burden is initially on the defendant to prove the invalidity of the plaintiff's copyright.  Masquerade

SC/1068386.1

Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663 (3d Cir. 1990).  The presumption of validity is Maxwell's to overcome.

Courts have repeatedly found that the defendants' burden in rebutting this presumption of validity is a very heavy burden.  See, Lennon v. Seaman, 84 F. Supp. 2d 522 (2nd Cir. 2000) and Tuff-N-Rumble Management, Inc. v. Sugar Hill Music Publishing, Inc., 99 F. Supp. 450 (2nd Cir. 2000).  The party seeking to invalidate the presumption "must establish that the application for the copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations" in issuing the certificate. Lennon v. Seaman, id. at 525.  Maxwell cannot show that the inaccuracies were willful or deliberate, nor can they show that the application for the copyright would have been rejected by the Copyright Office because of the minor error in Section 2(a) regarding authorship.  The corrected certificate is evidence that the Copyright Office would not have rejected York's application because of the error.

Maxwell's reliance on the Masquerade case is misplaced.  The Court in Masquerade focuses on the fact that omissions in the copyright application must be knowing or fraudulent to invalidate the claim.  Moreover, the Court noted that defendant's "view that an inadvertent omission from a registration will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the court." Masquerade, 912 F.2d at 668.

In Testa v. Janseen, 492 F. Supp. 198 (W.D. Pa. 1980), an error in the application for copyright registration resulted in erroneously listing the assignee as the author on the certificate of registration.  The defendants moved for summary judgment contending that the plaintiffs'

cause of action was barred by the equitable doctrine of unclean hands due to the false representations of authorship made to the Copyright Office and the Court. The Court held that where no prejudice resulted from such misrepresentation, the doctrine of unclean hands could not be invoked to affect the validity of the copyright. The Court also looked to the Second Circuit in the case of Rohauer v. Killiam Shows, Inc., 379 F. Supp. 723 (S.D.N.Y. 1974). There, it was held that the plaintiffs' transgressions did not relate tot he subject matter of the litigation. The Second Circuit defined a transgression as follows. First, it must harm or prejudice a defendant in some way. Alternatively, a defendant must show that a plaintiff participated in the very act of infringement with which a defendant is charged. Vogue Ring Creations, Inc. v. Hardman, 410 F. Supp. 609 (D.R.I. 1976) was cited as an example that illustrates the type of transgression that would warrant application of the doctrine of unclean hands. "In Vogue Ring, the plaintiff's copyright application omitted the fact of publication prior to receipt of a copyright. Since the plaintiff's misrepresentations went to the very validity of the copyright, the district court held that the doctrine of unclean hands barred the claim." Testa, supra. at _____. Considering the inadvertent error in naming the author, the Court in Testa found that plaintiffs' misrepresentations with respect to authorship were immaterial.

Professor Nimmer states that "courts generally have been most lenient, under both the 1909 Act and the current Act with respect to any innocent error contained in an application for a registered certificate." Nimmer & Nimmer, §7.20(B). Professor Nimmer contends that a misstatement or clerical error in an application "if unaccompanied by fraud, should neither

invalidate the copyright nor render the registration certificate incapable of supporting an infringement action." Nimmer, id.

The evidence at hearing will show that the reference to Banafshe Schippel as author in the original application was innocent and based on a good faith belief that an employee of Banafshe Schippel authored the original artwork, hence the reference to Banafshe Schippel in Plaintiff's Complaint. When the error was discovered, it was corrected. Accordingly, the Copyright Office issued a supplemental registration. Maxwell will be unable to overcome its heavy burden of proving invalidity of the copyright.

Defendants next attempt to argue that Maxwell's elephant design was the product of independent creation, not copying. It is well settled that independent creation can be a complete defense to a copyright infringement claim. However, in deciding whether a design is the product of copying or independent creation, the defendant's **access to and knowledge of the plaintiff's work are compelling indicia of plagiarism**. Rexnord, Inc. v. Modern Handling Systems, Inc., 379 F. Supp. 1190, 1194 (D. Del. 1974) (emphasis added).

In the instant case, Defendants admittedly had access to and knowledge of York's elephant wallcovering when Maxwell's elephant wallpaper was being designed. Indeed, Jaima Brown has admitted to providing a piece of York's elephant wallcovering to William Carroll and directing his attention to specific aspects of the York design. She has also admitted to being the individual who developed the colorways for the Maxwell wallpaper. Ms. Brown claims that she followed her knowledge of color trends in the marketplace in deciding upon the colorways. However, a side-by-side comparison of the York elephant wallcovering and the Maxwell design

reveals that two of the colorways or color schemes used by Maxwell closely resemble, if not outright match, York's colorways. The choice, combination, coordination and arrangement of color used in two of the three Maxwell colorways are virtually identical to that of the York designs. Although color is not sufficient by itself to prove copying, even Defendants acknowledge that it does provide some proof of copying. See Defendants' Brief pp. 9; See also York Wallcoverings, Inc. v. Coloroll, Inc., 681 F. Supp. 1004, 1008 (E.D.N.Y. 1987). Again, adding to the ever-increasing list of coincidences that Maxwell asks this Court to accept, Maxwell suggests that it was merely coincidental that they developed a colorway that nearly exactly replicates York's best selling colorway of the elephant design.

Additionally, color is far from the only similarity between the two works. Other common elements include the subject matter of the wallpaper and border, the use of elephants and leaves, the texture of the paper as well as the scale and use of lattice or scroll work in the design. Even when viewing the York elephant wallcovering and Maxwell's infringing design as a whole rather than element-by-element, the similarities between the two designs are remarkable. Given Defendants' admitted access to York's elephant wallcovering and the many similarities between the two designs, it strains the bounds of credibility to believe that Defendants' design was the result of independent creation or mere coincidence. To the contrary, visual comparison of the infringing Maxwell wallpaper and the York elephant wallcovering leads to the inescapable conclusion that Maxwell's design is the product of copying.

In addition to arguing that Maxwell's design was independently created, Defendants, somewhat incredibly, attempt to claim that the Maxwell design is not similar to the York

Elephant Wallcovering and Border design.  In making this argument, Defendants alternate

between the terms "striking similarity" and "substantial similarity."  However, these terms are

not interchangeable.  Rather, they have separate and distinct meanings in the realm of a

copyright infringement claim:

> The "strikingly similar" test is a much more difficult standard than the
> "substantial similarities" test.  In an average copyright case, the defendant has
> been given access to the product and the "substantial similarities" test is utilized
> to determine whether an inference of *copying* may be inferred from the
> similarities between the two products.  In a case where there is no evidence of the
> defendant's access to the copyrighted product, the "striking similarities" test is
> used to determine whether an inference of *access* may be inferred from the
> similarities between the products.  Of course, a determination that similarities are
> so striking as to infer *access* to plaintiff's product will necessarily determine that
> the similarities are also so substantial as to warrant an inference that the defendant
> copied the plaintiff's product.

Roginski v. Time Warner Interactive, Inc., 967 F. Supp. 821, 827 fn. 10 (M.D. Pa. 1997)

(emphasis in original).

As explained in Roginski, a simple reason exists to explain this seemingly odd

dichotomy:

> Where access is actually established, it is more likely that copying occurred and
> less evidence of similarities is required.  Where access is not established, it is less
> likely that copying occurred and a stronger resemblance of the two works is
> needed to support an inference of access.

Id. at 827.

In the instant case, Defendants have admitted to having access to York's Elephant

Wallcovering and Border designs.  The two individuals involved in the design and coloring of

Maxwell's product had York's product in their hands and referred to it when creating their

infringing product.  Accordingly, the "striking similarity" test does not apply and York must only

come forward with evidence to show "substantial similarity" between its works and the infringing Maxwell designs. York has adduced more than ample evidence of similarity to meet this standard. As set forth above, visual comparison of the infringing Maxwell wallpaper with York's Elephant Wallcovering and Border reveals extensive similarities in subject matter, texture, color schemes and arrangement of colors. The **overall look and feel** of the designs are also remarkably similar. In addition to pointing out the obvious similarities to the ordinary observer, York will offer the testimony of several York employees, including Ron Redding, a well recognized, expert designer with decades of experience in the wallcovering industry, at the injunction hearing regarding the more subtle similarities between the York and Maxwell designs. This evidence, when taken as a whole, establishes York's ownership of a valid copyright and support a finding of copying by Maxwell and Jaima Brown. Accordingly, York has shown a likelihood of success on the merits such that a preliminary injunction should issue.

### B.    Irreparable Harm

Defendants also argue that York has not suffered any irreparable harm as a result of Maxwell's copying of York's Elephant Wallcovering and Border designs. They base this argument on two contentions: (1) that York's delay in seeking an injunction precludes a finding of irreparable harm; and (2) that York has not produced any evidence that its damages cannot be remedied at law. Both contentions are without merit.[1]

---

[1] Maxwell also argues that York should be barred from asserting irreparable harm. This argument is meritless as well. Despite Maxwell's assertions, injunctive relief was demanded in York's Complaint and the assertion of irreparable harm was re-iterated during the course of the discovery process. Admittedly, mediation was expressly addressed in the Joint Case Management Plan as was the "nature and extent of Plaintiff's damages." At the time Maxwell indicated that it desired mediation as well.

SC/1068386.1

With regard to Defendants' delay argument, it is true that a significant delay can undermine the presumption of irreparable harm. However, it is also true that a showing of delay does not preclude, as a matter of law, a determination of irreparable harm. See e.g. Sunquest Information Systems, Inc. v. Park City Solutions, Inc., 130 F. Supp.2d 680, 697-98 (W.D. Pa. 2000). Rather, the facts and circumstances of each particular case need to be considered in determining whether or not a delay is justified.

The facts of record show that York has not unreasonably delayed in seeking a preliminary injunction in the instant case. It appears that Defendants would have had York rush to judgment. Rather, prior to filing suit, York investigated their concerns fully before acting on them. York searched the market place to make sure their product was truly unique before reaching the conclusion that copying had occurred, hence the passage of a few months before suit was filed. Then, York gave Maxwell an opportunity to resolve the dispute. When Maxwell's President, Mr. Emmert, asked for some time to look into the allegations, this request was granted.

Furthermore, unlike the cases cited by Defendants, this is not a situation where York sat idly by while Maxwell infringed its copyright. Rather, the record in this case shows that early on in the process, York requested that a mediation session be scheduled in an effort to reach an amicable resolution of this dispute and Defendants agreed to seek early mediation of the dispute. See Joint Case Management Plan. York believed that Defendants intended to negotiate in good faith at the mediation. However, when it became apparent that Defendants were not negotiating in good faith to resolve this claim, York promptly filed for preliminary injunctive relief. York should not be punished for failing to seek injunctive relief when it believed that an amicable

resolution was possible and, in fact, desired by Maxwell.  Indeed, "parties should not be encouraged to sue before a practical need to do so has been clearly demonstrated." Playboy Enterprises v. Chuckleberry Publishing, 486 F. Supp. 414, 434-35 (S.D.N.Y. 1980).

Since the facts of record show that York sought injunctive relief as soon as the need became apparent, any alleged delay on the part of York is justified and York is entitled to a presumption of irreparable harm.

Defendants also argue that York has not shown that it will suffer any harm as a result of Maxwell's infringement which cannot be compensated with money damages.  They claim that the President of York Wallcoverings, Carl J. Vizzi, admitted that York had not suffered irreparable harm as a result of Maxwell's actions.  At best, Defendants' argument is disingenuous.

Defendants' counsel's recitation of Mr. Vizzi's testimony is incomplete and is misleading. Reading the relevant portion of Mr. Vizzi's deposition transcript in its proper context, it is clear that he neither stated nor believes that York's damages as a result of Maxwell's infringement can be fully compensated with money damages.

In making the argument that York has not been irreparably harmed, Defendants also attempt to distinguish Price v. Metzner, 574 F. Supp. 281 (E.D. Pa. 1983), a case in which the harm suffered by the plaintiff is closely analogous to that sustained by York in the instant case. Defendants argue that Price is inapplicable because the Court presumed the likelihood of irreparable harm based on its finding that the plaintiff's copyright was infringed.  Like the

SC/1068386.1

plaintiff in <u>Price</u> though, York has also produced sufficient evidence to prove copying by Defendants. Therefore, <u>Price</u> and the presumption of irreparable harm apply to the instant case.

As in <u>Price</u>, York has suffered irreparable injury in the form of harm to its reputation and competitive position vis-à-vis Maxwell. <u>See</u> York's original Memorandum of Law in Support of the Issuance of a Preliminary Injunction pp. 10-11. Additionally, like the plaintiff in <u>Price</u>, York has suffered, and will continue to suffer in the future, immeasurable and incalculable damages as a result of Defendants' infringing wallpaper. Given the popularity of York's Elephant Wallcovering and Border, **York has included these designs in another sample book** entitled Passages East which was released in September, 2001. A wallpaper sample book has a typical lifespan of three years. <u>See</u> Affidavit of LeRue Brown. Therefore, while the lifespan of the original sample book containing the York designs may expire in or around October of 2002, York will continue to face losses over the next three years which cannot be quantified or which will be difficult to calculate with accuracy. By definition, this is irreparable harm. Since York has suffered irreparable injury as a result of Maxwell's actions, Defendants should be enjoined from marketing, selling or distributing the infringing wallpaper pending a trial on the merits.

**C.    The Balance of Harm**

In their Brief, Defendants also argue that they will suffer greater harm if a preliminary injunction issues than York will face in the absence of an injunction. Defendants claim that if an injunction issues, there is "no question" that their distributors and retailers "would dispose of the entire books rather than attempt to remove the samples at issue." <u>See</u> Defendants' Brief pp. 14. Defendants further claim that most of the retailers "would cease display of these books rather

than have to explain to customers which of the samples in the books are no longer available" and "would undoubtedly look to Maxwell for at least partial reimbursement" of the $60 cost of the sample book. Id. Throughout their Brief, Defendants reference numerous Affidavits and documents as support for their allegations. Interestingly though, when it comes to the above assertions, other than the self-serving statements of Maxwell's own President, there is nothing in the over 50 page submission by Defendants that supports their claims. Since Defendants' claimed harm is nothing more than self-serving speculation, unsupported by any objective evidence, it should not be relied upon in balancing the hardships associated with the issuance of a preliminary injunction in the instant case.

Perhaps realizing the lack of any true hardship which will be caused by the issuance of an injunction, Defendants attempt to defeat York's Motion by claiming that the injunction will be "of minimum benefit" to York. This argument also lacks merit. As set forth above, York's Elephant Wallcovering and Border have been included in another sample book. This sample book will have an estimated lifespan of three years. See Affidavit of LeRue Brown. Therefore, York will continue to face harm to its reputation and other associated business losses up through the time of trial if Maxwell is permitted to continue marketing, selling and distributing its infringing designs. In contrast, Maxwell has failed to show that it will suffer any legitimate harm if it is enjoined from selling its infringing wallpaper. Therefore, when looked at as a whole, the equities clearly favor the issuance of a preliminary injunction in this case. Since the public interest also weighs heavily in favor of equitable relief in this matter, York has satisfied all of the necessary elements for a preliminary injunction to issue.

SC/1068386.1

Based on the authorities and reasoning cited herein and in the original Memorandum in Support of the Motion for a Preliminary Injunction, Plaintiff York Wallcoverings respectfully requests that Defendants S.A. Maxwell Company, Inc. be enjoined from selling, distributing and/or marketing its infringing Elephant wallcovering, border and fabric designs pending trial on the merits.

Date: _April 15, 2002_

BARLEY, SNYDER, SENFT & COHEN, LLC

By: _____

    Bruce J. Wolstoncroft, Esquire
    Kendra D. McGuire, Esquire
    Attorneys for Plaintiff
    York Wallcoverings, Inc.

    126 East King Street
    Lancaster, PA 17602
    (717) 299-5201
    Court I.D. No. 43923
    Court I.D. No. 50919

SC/1068386.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply Brief has been served this 15th day of _April_, 2002, by first-class mail, postage pre-paid, upon:

Albert Robin, Esquire
Robin, Blecker & Daley
330 Madison Avenue
2nd Floor
New York, NY 10017

Ronald P. Schiller, Esquire
Piper, Marbury, Rudnick & Wolfe, LLP
3400 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2762

Joseph L. Turchi, Esquire
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107

BARLEY, SNYDER, SENFT & COHEN, LLC

By: _____
Bruce J. Wolstoncroft, Esquire
Kendra D. McGuire, Esquire
Attorneys for Plaintiff
York Wallcoverings, Inc.

126 East King Street
Lancaster, PA 17602-2893
Court I.D. No. 43923
Court I.D. No. 50919

SC/1068386.1