IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YORK WALLCOVERINGS, INC., | : |
| Plaintiff, | : NO. 1:CV-01-0793 |
| v. | : (The Hon. Sylvia H. Rambo) |
| S.A. MAXWELL COMPANY, INC. and JAIMA BROWN, | : |
| Defendants. | : |

**DEFENDANTS' POST-HEARING MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

At the conclusion of the hearing on Plaintiff's Motion for a Preliminary Injunction, the Court granted Defendants leave to submit a post-hearing memorandum. Defendants submit this memorandum to discuss some of the points raised in Plaintiff's Reply that they did not previously have an adequate opportunity to cover.

(1) <u>The Effect of Plaintiff's Delay</u>

From January of 2001 when York learned of Maxwell's Sesquicentennial Collection, or February of 2001, when York saw Maxwell's "elephant and palm" sidewall and border, through February 27, 2002, when York filed its request for an Order to Show Cause, York never claimed that the Maxwell sidewall and border was causing it irreparable harm. York never sought a preliminary injunction, and such inaction seems compelling evidence of the absence of irreparable harm. Nothing occurred in the ensuing 15 months which would give rise to irreparable harm, and the fact that the York and Maxwell wall coverings have both been sold

without incident confirms that such harm not only has not occurred, but is unlikely to occur at all, let alone before the time set for trial.

In its reply and at the hearing, York attempted to justify part of its delay by its "hope" that the matter would be settled in the mediation which occurred in January. Not only is the hope of settlement irrelevant to the issue of irreparable harm, but York's references to the mediation, and particularly its characterization of what occurred there, is a clear violation of this Court's rules. In its Reply, York stated that Defendants did not negotiate in "good faith." This attempt to take advantage of the mediation process seems in clear violation of the Court's rules. LR 16.8.6 and LR 16.9.4(b) both provide in part: "None of the proceedings shall be used by any adverse party for any reason in the litigation at issue."

An appropriate remedy for such misuse of mediation would be to make the assumption that the mediation proceedings confirmed the absence of irreparable harm.

2. The Defects in York's Copyright Registration

When York filed its copyright application for the sidewall elephant design (Plaintiff's Exhibit 1) in February of 2001, it claimed that the design at issue was created by Banafshe Schippel Design Ltd. ("Banafshe Schippel") as a work for hire and that it was the assignee of Banafshe Schippel. If York then believed, as it now claims, that the work was authored by an employee of Banafshe Schippel, the assignment which it had signed by a "P. Scullin"[1] was not and could not be the assignment from Banafshe Schippel which it needed. It was only after Defendants raised the issue of lack of copyright ownership that Plaintiff filed the supplemental

---

[1] Her name also appears as "Tricia Scullin" in the same document and as "Patricia Scullin" in supplemental copyright registration.

2

registration in an attempt to conform authorship to the assignment which it received, and even now the complaint alleges Banafshe Schippel to be the author.

The reason for the change in authorship is not clear. While York now contends it was a mistake, York knew in February of 2001 when the application was filed that it had an assignment from Ms. Scullin and not Banafshe Schippel. One possibility is that York was unable to obtain an assignment from Banafshe Schippel. A second is that the term of a copyright in a work for hire is different than the term for a work authored by Ms. Scullin. 17 U.S.C. §302. A third is the requirement that the design be original to its author. In any event, until February of 2002 when Defendants learned of the supplemental registration, they were entitled to rely upon the fact that Plaintiff did not own the copyright in the design at issue since it had no assignment from its author.

The cases cited in Plaintiff's reply are inapposite insofar as they involve claims of invalidation by reason of fraud. Here, Defendants do not seek invalidation of copyright, but only a loss of prima facie effect, a loss that could only be cured by testimony from Ms. Scullin as to creation of the design and its originality.

(3) The Significance of the Colorways

While the complaint, which has not been amended, clearly alleges that only two of the three colorways of the Maxwell elephant and palm sidewall and border infringe York's copyrights, a fact which is confirmed by the instructions to Plaintiff's discovery requests which are attached to the Robin affidavit, Plaintiff now contends that it is entitled to enjoin all three.

It certainly cannot be said that the issue of the third colorway was tried by consent or otherwise during the preliminary injunction hearing – in fact neither the third colorway nor even the second colorway were even mentioned during the hearing, let alone the subject of

3

comparison by the witnesses who testified as to similarity or the lack thereof. The reason for this seems obvious. When the third Maxwell colorway is compared with any of the York colorways, it is not similar. In fact, when the second colorway is compared with any of the York colorways, the differences are more readily apparent. Thus, by only displaying one colorway to the Court, Plaintiff is trying to obtain something to which it is not legally entitled - a copyright in color.

None of York's copyright registrations make any reference to color. The sidewall registrations list as author either Banafeshe Schippel or Patricia Scullin. Even though the four different colorways were contributed by York employees, neither registration mentions, let alone claims, this contribution. The border registration (Plaintiff's Exhibit 3) does contain the following language: "Revised artwork involving rearranging of elements" and "[e]nlarged an elephant from a purchased design to create a border." If one colorway, let alone four different colorways, were claimed to be part of the copyrighted design, such a claim should have been included.

More significantly, Plaintiff's failure to include the third colorway in the complaint is an admission that it is not the designs at issue which are similar but only the colors used in connection therewith.

(4) If the Designs Were Substantially Similar
    They Would Evoke Similar Written Descriptions

The print and electronic versions of the Wallpaper Guide have described the York border as follows:

> A parade of ornately adorned Asian elephants marches across this 7 inch border. Sprays of leaves and flowers are tossed between the elephants:
> (Guide, p. CB42; web site under "elephants")

> An elephant draped in a gilded tapestry and wearing a hat and shoes walks across this East Indian influenced 6-3/4 inch border. The background features a large blossom and vertical stripes against a shantung pattern. (web site under "elephant")

The electronic version of the Wallpaper Guide under "elephants" has described the Maxwell design as follows:

> A pattern of palm trees and decorative elephants between the bands overlay a textural border resembling coarse linen.

These descriptions seem to add confirmation to the hearing testimony of Mr. Carroll and Ms. Brown describing the differences in the designs and the independent creation of the Maxwell design. If the two designs were as substantially similar as York contends, it seems unlikely that the trade would describe them so differently.

(5) The Balance of the Equities

During the hearing, a suggestion was made that Mr. Emmert's fears as to the consequences of a preliminary injunction were exaggerated. These fears were based upon his knowledge acquired through decades of experience in retailing, distribution and manufacturing of wallcoverings. Of course, if he is right, and Maxwell is enjoined, Maxwell could lose some, if not all, of its anticipated sales of $750,000 of the non-"elephant" patterns in the Sesquicentennial Collection, which are in no way involved in this suit, a loss which would be permanent even if Maxwell prevails after a trial on the merits.

On the other hand, if a preliminary injunction does not issue, and York prevails after trial, the only harm to York will be that occasioned by a few more months of continued sales of the "elephant and palm" patterns, a harm which could be adequately compensated by money damages.

## CONCLUSION

For the reasons set forth above and in Defendant's prior memorandum, it is respectfully requested that Plaintiff's Motion for Preliminary Injunction be denied.

May 8, 2002

                                              Respectfully submitted,

                                              */s/ Albert Robin*
                                              Albert Robin
                                              Robin Blecker & Daley
                                              Attorneys for Defendants
                                              330 Madison Ave
                                              New York, NY 10017
                                              (212) 682-9640

Of Counsel:

Joseph L. Turchi
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107