ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK WALLCOVERINGS, INC., | : | |
| Plaintiff, | : | NO. 1:CV-01-0793 |
| v. | : | (The Hon. Sylvia H. Rambo) |
| S.A. MAXWELL COMPANY, INC. and JAIMA BROWN, | : | |
| Defendants. | : | |

FILED
HARRISBURG, PA
AUG 0 9 2002
MARY E. D'ANDREA, CLERK
Per _____

AFFIDAVIT OF ALBERT ROBIN IN SUPPORT OF MOTION IN LIMINE
TO LIMIT THE SCOPE OF MARK PETERSON'S TRIAL TESTIMONY

STATE OF NEW YORK   )
                    : ss.:
COUNTY OF NEW YORK)

Albert Robin, being duly sworn, deposes and says:

1. I am the attorney for Defendants herein and I am fully familiar with all of the proceedings heretofore had herein and all of the matters hereinafter set forth.

2. I make this affidavit in support of Defendants' Motion in Limine to Limit the Scope of Mark Peterson's Trial Testimony and in support of Defendants' Objections to Plaintiff's Trial Exhibit 24 at such time as objections to trial exhibits will be heard.

3. Rule 26(a)(1)(C) of the Federal Rules of Civil procedure requires a party to make an initial disclosure of:

> [a] computation if any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered;

4. Plaintiff made its mandatory disclosure with a letter dated October 2, 2001, and Defendant made its mandatory disclosure with a letter dated October 11, 2001. Notwithstanding the requirement of Rule 26(a)(1)(C), neither Plaintiff's October 2, 2001 letter nor the documents enclosed therewith related in any respect to damages except insofar as the letter stated that additional documents will be forthcoming as soon as we have a signed Confidentiality Agreement.

5. While the Confidentiality Agreement was signed by the principal attorneys by November 6, 2001, and by all of the other attorneys within two weeks thereafter, Plaintiff has never made any mandatory disclosure with respect to damages other than those computed on the basis of Maxwell's profits from its sale of the elephant and palm sidewalls, borders and fabrics.

6. On October 25, 2001, Defendants served upon Plaintiff the following requests for production of documents relating to damages:

> 3. All documents evidencing, referring or relating to damages claimed to have been sustained by York as a result of the offering for sale and sale of the S.A. Maxwell Company, Inc. ("Maxwell") Elephant, Palm and Scroll Sidewall and Elephant, Palm and Scroll Border.
>
> \*   \*   \*   \*
>
> 6. All documents evidencing, referring or relating to damages claimed to have been sustained by York by reason of the cover of the Maxwell Sesquicentennial Book.

7. On December 19, 2001, Plaintiff served a belated response stating:

> 3. To be supplied.
>
> \*   \*   \*   \*
>
> 6. Plaintiff is currently in the process of calculating damages. Plaintiff has not yet received Defendants' damages

2

information. This information has been requested but has not as yet been provided to Plaintiff. Plaintiff believes this information is needed to complete its damages calculations.

8. In the letter forwarding these responses, Plaintiff's counsel stated: "I am still awaiting documents on damages from my client and will provide them as quickly as possible. Our goal is to get this information to you prior to the holiday."

9. On December 26, 2001, Defendants' counsel addressed a letter to Plaintiff's counsel complaining of various defficiencies in Plaintiff's document production. With respect to damages, the letter stated:

> Request Nos. 3 and 6 – Since documents supporting plaintiff's damage claim were due as part of plaintiff's mandatory disclosure, there is no excuse for the fact that no such documents have as yet been produced, and we will move for an order of preclusion.

10. On December 27, 2001, I had a telephone conference with Plaintiff's counsel in which she denied that damage documents were due as part of Plaintiff's mandatory disclosure (in spite of the language of Rule 26 and in spite of the fact she had agreed in the Joint Case Management Plan to produce damage information subject to a confidentiality agreement). Plaintiff's counsel claimed that she would be in a position to produce damage documents in a couple of weeks.

11. With a letter dated January 2, 2002, Plaintiff's counsel furnished a document entitled "Damages Calculation" setting forth Plaintiff's Gross Sales of all of the wallcoverings, borders and fabrics included in the Passport Collection, the cost of goods sold and net profit. The document shed no light on the sales or cost of goods sold of the York "elephant" sidewalls and borders which are the subject of its copyright infringement claim. The letter set forth the conclusory statement that all of Maxwell's sales would have been York's sales and that the only costs which York would incur would be the

3

incremental costs of manufacture, even though additional manufacturing and selling costs would necessarily have been incurred. York may not use its *ipse dixit* to limit the scope of Defendants' discovery.

12. On January 4, 2002, Defendants served Defendants' Interrogatories to Plaintiff. Interrogatory 6 asked:

> 6. Set forth Plaintiff's sales price and suggested retail sales price of the York Wallpaper in suit and the York Border in suit and each item of costs incurred by York for such wallpaper and border, including manufacturing costs, warehousing costs, advertising and promotion costs, salesmen's salaries and/or commissions and other selling costs, shipping costs and the costs of allowances given the purchaser and returns.

13. On February 4, 2002, York responded to this interrogatory as follows:

> 6. Objection. Plaintiff objects insofar as this interrogatory seeks information which is not likely to lead to the discovery of admissible evidence. Plaintiff further objects to the request for the "sales price" as being vague; Plaintiff does not know what figure Defendants are requesting. Without waiving these objections, cost information relevant to the time period during which Defendants' infringing designs were on the market have already been provided to Defendants. The suggested retail price of Plaintiff's elephant sidewall was $33.99 per roll and was increased to $35.99 per roll in September, 2000. The suggested retail price of Plaintiff's elephant border was $30.99 per roll and was increased to $32.99 per roll in September, 2000.

With these responses, York furnished a document showing dollar sales by month from October 1999 through December 2001 for each of the colorways of the York elephant sidewall and each of the colorways of the York elephant border. Since such document reflected neither sales price nor costs, it did nothing to inform Defendants as to the method by which York calculated its lost profits claim, let alone the amount thereof.

14. The objection to Interrogatory No. 6 was, of course, without merit. The issue being explored by the interrogatory was Plaintiff's claim for lost profits. The price

at which Plaintiff's goods were sold and the costs associated with such sales were essential elements of any lost profits claim. Moreover, it seems incredible that Plaintiff did not understand "Plaintiff's sales price" to refer to the price at which Plaintiff's goods were sold to its customers.

15. The Answer to Interrogatory No. 6 was also factually erroneous. As I informed Plaintiff's counsel in a letter dated February 6, 2002: "Contrary to the answer, plaintiff has not furnished the York sales price or any of the requested cost information with respect to the York Wallpaper and the York Border in suit, all that plaintiff has furnished is some limited information as to the Passport Book as a whole. This will be encompassed in Defendants' motion to preclude."

16. On February 14, 2002, Plaintiff served a Supplemental Response to Defendants' First Requests to Plaintiff for Production of Documents. The supplemental response to Request No. 3 stated: "See attached document. Plaintiff also intends to rely on sales and revenue information provided by Defendants concerning Maxwell's sales of infringing wallcoverings, borders and fabrics." Since the "attached document" was a summary through December 20, 2001 of Maxwell's sales of two colorways of its elephant and palm sidewall and border, Plaintiff's responses to Defendants' document requests confirm that its damage claim for the Maxwell elephant and palm sidewalls, borders and fabric was limited to Maxwell's profits.

17. No supplemental response was made to Request No. 6, dealing with damages claimed to have been sustained by reason of the cover of the Sesquicentennial Collection Sample Book, and since Plaintiff had not previously made any substantive response to this request, any claim for such damages has been waived.

5

18. During a telephone conference on February 25, 2002 dealing with an unrelated discovery dispute, the Court inquired if there were any other unresolved discovery matters, and I informed the Court of this dispute on damage information.

19. In its Order of February 25, 2002, the Court resolved the damages discovery dispute by entering the following Order:

> (2) Plaintiff shall produce information regarding its total costs that relate to Plaintiff's claim for damages; and
>
> (3) Plaintiff shall comply with this order by March 1, 2002.

20. On March 1, 2002, Plaintiff served its "Second Set of Supplemental Answers to Defendants' Interrogatories to Plaintiff." In the answer to Interrogatory 6, Plaintiff set forth the price paid by distributors for the York Elephant Sidewall (single roll) and the price paid by distributors for the York Elephant Border (per spool), the amount of the design costs paid to Banefshe Schippel, the engraving costs and manufacturing costs for the York Elephant Sidewall design, and the studio costs, manufacturing costs and engraving costs for the York Elephant Border design. This selling price information was not only belated but also apparently inaccurate since the price set forth was noticeably higher than the average price shown on Exhibit 3 to the Rebuttal Expert Report on Damages of Mark A. Peterson.

21. By letter dated March 6, 2002, Plaintiff's counsel informed Defendants' counsel of the number of rolls of sidewall and spools of border sold through December 21, 2001. While this period did not exactly coincide with the sales figures furnished on February 4, 2002, Maxwell, for the first time, was given some understanding of York's unit sales price, information which was critical to any claim for lost profits and

information that should have been included in mandatory discovery months earlier.

22. On March 22, 2002, Plaintiff's counsel informed Defendants' counsel of York's per roll administrative costs without any specification of the items encompassed thereby.

23. Notwithstanding York's obligations under Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure, York's duty to respond to Defendants' document requests and interrogatories and the requirement that York comply with the Court's February 25, 2002 Order, York has never furnished Maxwell with the information necessary for Defendants to ascertain the amount of profits which York claims to have lost as a result of the alleged infringement, let alone information which suggests that York is entitled to any lost profits.

WHEREFORE, it is respectfully requested that Defendants' Motion in Limine to Limit the Scope of Mark A. Peterson's Trial Testimony be granted.

_____
Albert Robin

Subscribed and sworn to before me
this 8th day of August, 2002,

_____
Notary Public

HOWARD B. BARNABY
Notary Public, State of New York
No. 02BA4705472
Qualified in New York County
Commission Expires July 24, 2005

7