ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORK WALLCOVERINGS, INC., :

    Plaintiff, : NO. 1:CV-01-0793

    v. : (The Hon. Sylvia H. Rambo)

S.A. MAXWELL COMPANY, INC. :
and JAIMA BROWN,
    :
    Defendants.

FILED
HARRISBURG, PA
SEP 0 5 2002
MARY E. D'ANDREA, Cl
Per _____ Deputy Clerk

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION IN LIMINE TO LIMIT THE SCOPE
OF MARK A. PETERSON'S TRIAL TESTIMONY

INTRODUCTION

Defendants, S.A. Maxwell Company, Inc. and Jaima Brown, ("Defendants"), submit this Reply Brief in support of their motion in limine to limit the testimony of Mark A. Peterson and exhibits appended to his reports to the issue of Defendants' profits arising from the sale of the wallcoverings alleged in the Complaint to infringe Plaintiff's copyrights.

I. Maxwell's Profits.

In his Initial Report, Mr. Peterson set forth the opinion that York is entitled to recover Maxwell's profits on its sales of the three colorways of the Maxwell elephant and palm sidewall, of the three colorways of the Maxwell elephant and palm border, of the three color ways of the coordinating fabric, and of the Sesquicentennial Collection sample books. This report accurately set forth the sales of the sidewall, border and fabric through April 15, 2002 but inaccurately set forth the sales of the sample books. In their

responses to discovery requests, Defendants had set forth information as to sales in dollars and in rolls of all of the wallcoverings included in the Sesquicentennial Collection sample book. In his Initial Report, Mr. Peterson treated the dollar sales information as if it represented dollar sales of sample books rather than dollar sales of the wallcoverings included in the collection.[1] Even though it is Maxwell's profits and not Maxwell's sales of which the Copyright Act permits recovery, Mr. Peterson did not attempt to calculate Maxwell's profit on these items even though he had been furnished with the cost of goods sold, *i.e.*, the price paid by Maxwell to their manufacturer, and other costs attributable to the sale of the sidewalls, border and fabrics.

Since Maxwell had never been requested by Plaintiff to furnish either the number of sample book sales or the costs associated therewith, Mr. Peterson could not have accurately determined either the sales of sample books or the profit or loss attributable thereto. However, in view of Mr. Peterson's claimed experience with the wall covering industry, he should have known that sample books are not sold in the traditional sense but rather furnished to distributors who would then distribute them to retailers, that they are sold to distributors at a loss and that the cover of the sample book, and even its contents, has nothing to do with the number of books distributed.

Since Peterson's Initial Report raised the issue of sales of the sample books for the first time, Defendants responded thereto in two ways. First, it served upon Plaintiff a printout prepared by Maxwell's Controller setting forth the actual number of Sesquicentennial Collection sample books distributed, the moneys received for those

---

[1] This misinterpretation has no explanation since the sales figures were given both in dollars and in rolls, and Plaintiff's counsel recognized that these were "collection" sales in her March 22, 2002 letter seeking an update. *See* paragraph 5 of the affidavit of Albert Robin submitted herewith.

books, the costs incurred in the production of those books and the net loss sustained thereon. Second, it served upon plaintiff the Bernatowicz Report that made reference to these figures.

While in his Rebuttal Report, Mr. Peterson did correct the sales figure for the Sesquicentennial Collection sample book, he did not use the corrected figure to recalculate Maxwell's profits, but rather to help construct a reasonable royalty. Thus, Peterson's Rebuttal Report changed the damage theory espoused in his Initial Report from the recovery of Maxwell's profits to the recovery of a reasonable royalty on Maxwell's sales of not only the Maxwell elephant and palm sidewalls, borders and fabrics, but also on sales of the sample books. Peterson's Rebuttal Report does not correct a mistake made in Peterson's Initial Report, as authorized by Rule 26(e)(1)(C), but rather sets forth a completely new and different damage theory.

II. There Is No Basis For Use Of A Reasonable Royalty Theory.

While it is true that the Bernatowicz Report suggested use of a reasonable royalty because, on a fully absorbed basis, Maxwell lost money on the elephant and palm sidewalls, borders and fabrics, such a suggestion does not constitute justification for Mr. Peterson's belated adoption of a reasonable royalty theory or for use of such a theory as a measure of Plaintiff's damages. Where, as here, it is possible to quantify Maxwell's profits, and, if supported by evidence of lost sales, York's lost profits, there is no need to use a reasonable royalty.

The Section 504 and 505 of the Copyright Act, 17 U.S.C. §§ 504 and 505, specify the remedies available for infringement as consisting of "the copyright owner's actual damages" and "profits of the infringer." These sections of the Act also give the copyright

3

owner the option to elect statutory damages and to recover attorney fees, provided registration is timely obtained. 17 U.S.C. §412. Unlike the Patent Act, 35 U.S.C. §284, the Copyright Act does not provide for use of a reasonable royalty. In those situations where there is evidence that the copyright owner has engaged in licensing, actual damages might be measured by a royalty on the infringer's sales, but there is no such evidence here.

Moreover, even if a reasonable royalty were a permissible measure of Plaintiff's damages, it would only apply to the sidewall, border and fabric sales, which were sold on the basis of their allegedly infringing design, and not to the sample books, whose cover had nothing to do with their sales.

III. Not Only Is There No Foundation In His Initial Or Rebuttal Reports For Mr. Peterson To Testify As To Any Lost Profits, But There Is No Basis In The Record For York To Recover Any Lost Profits.

The balance of Defendants' Motion in Limine directed to Mr. Peterson relates to exclusion of exhibits to his reports relating to a possible York claim for lost profits. There are several reasons why these exhibits should be excluded. First, Peterson's Initial Report contains makes no mention of a possible claim for lost profits and Peterson's Rebuttal Report contains no opinion of any entitlement thereto. Thus, there is no basis for Mr. Peterson to testify as to lost profits. Second, neither Report makes any effort to calculate what the amount of such profits would be. Plaintiff attempts to excuse this omission on the ground that "York's theory of loss profits is based upon Maxwell's sales figures (figures which York did not have at that time)." Of course, York's theory of lost profits has nothing to do with Maxwell's sales. Even assuming that Plaintiff meant "York's claim for lost profits," this excuse ignores the fact that both Plaintiff and Mr.

4

Peterson knew what Maxwell's sales were as of April 15, 2002, and that lost profits could in any event be expressed on a per unit basis.

Third, a prerequisite to a lost profits claim is the showing, with reasonable probability, of a causal connection between the alleged infringement and some anticipated loss of revenue. There has not been, and, for the reasons set forth in Defendants' moving papers, could not be, such a showing. In fact on page 6 of Peterson's Rebuttal Report, he admits: "Mr. Bernatowicz may be correct that it is impossible to correctly calculate lost profits."

Fourth, as is set forth in detail in the moving papers the information contained in the exhibits attached to the Peterson Reports relating to lost profits was not disclosed in a timely fashion.

IV. There Was No Need For A *Daubert* Hearing.

One of Plaintiff's responses to Defendant's attack on the use of a reasonable royalty in Peterson's Rebuttal Report is the contention that such an attack could only be made in a *Daubert* hearing. This contention is not correct.

The issues raised by Defendants, namely, (1) whether there is any legal basis for measuring York's damages by a reasonable royalty and (2) whether it was proper for Mr. Peterson to adopt a reasonable royalty theory for the first time in his Rebuttal Report are matters of law, not economic theory, and a motion in limine to limit the scope of Mr. Peterson's trial testimony is the appropriate way in which such matters of law are to be raised.

## CONCLUSION

For the reasons set forth above and in their moving brief, Defendants respectfully request that this Honorable Court grant their motion and limit the trial testimony of Mark

5

A. Peterson and exhibits to Maxwell's profits from the sale of the colorways of Maxwell's elephant and palm sidewalls and borders that are alleged in the Complaint to infringe Plaintiff's copyrights.

Dated: New York, New York
September 4, 2002

                                      Respectfully submitted,

                                      Albert Robin (AR-7254)
                                      Robin Blecker & Daley
                                      Attorneys for Defendants
                                      330 Madison Avenue
                                      New York, NY 10017
                                      (212) 682-9640

Of Counsel:

Joseph L. Turchi
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107